UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAEED A.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CASE NO. C25-818-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff appeals the ALJ's decision finding him not disabled. He contends new evidence he submitted to the Appeals Council undermines the ALJ's finding that he does not meet the requirements of a listed impairment. Alternatively, he argues the ALJ erroneously rejected his testimony and made step-four findings unsupported by substantial evidence. Dkt. 9 at 1. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for benefits in August 2021 and alleged a disability onset date of April 1, 2019. Tr. 107. After his application was denied initially and on reconsideration, Tr. 114, 133, the ALJ conducted a hearing on September 28, 2023, and issued a decision on March 20, 2024 finding Plaintiff not disabled. Tr. 18-28, 68-106. Plaintiff requested Appeals Council review and

1    submitted new evidence in support of this request. Tr. 33-67, 247-49. The Appeals Council

2    found there was no reasonable probability the new evidence would alter the ALJ's decision and

3    denied review making the ALJ's decision the Commissioner's final decision. Tr. 2.

4                                              **THE ALJ'S DECISION**

5          Applying the five-step disability evaluation process,[1] the ALJ found Plaintiff has not

6    engaged in substantial gainful activity since April 2019; Plaintiff's right leg above-knee

7    amputation is a severe impairment; and this impairment did not meet or equal the requirements

8    of a listed impairment. Tr. 20-21. The ALJ found Plaintiff has the residual functional capacity

9    (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except Plaintiff:

10         Can lift and carry 20 pounds occasionally and 10 pounds frequently; can
           occasionally climb ramps and stairs; can never crawl or climb ladders, ropes, or
11         scaffolds; can occasionally balance, stoop, kneel, and crouch; and can tolerate
           occasional exposure to extreme vibrations and hazards such as unprotected
12         heights and dangerous machinery.

13   Tr. 23. The ALJ found Plaintiff can perform past relevant work as a taxi driver and was therefore

14   not disabled. Tr. 27.

15                                              **DISCUSSION**

16         The Court may reverse the ALJ's decision only if it is not supported by substantial

17   evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

18   *Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012). The Court may not reverse the ALJ's decision on

19   account of errors that are harmless. *Id.* at 1111. The Court may neither reweigh evidence nor

20   substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954

21   (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the

22   Court must uphold the Commissioner's interpretation. *Id.*

23   _____

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 2

1    **A.      New Evidence Submitted to the Appeals Council**

2         Plaintiff submitted new evidence to the Appeals Council from Harborview Medical

3    Center (dated March-July 2012); the Division of Vocational Rehabilitation (dated April-

4    September 2015); and the Hanger Clinic (dated May-August 2023). Tr. 33-67. The Appeals

5    Council found this evidence did not with reasonable probability alter the ALJ's decision, denied

6    Plaintiff's review request, and declined to exhibit the new evidence. Tr. 2. Plaintiff argues the

7    new evidence undermines the ALJ's finding he does not meet Listing 1.20D, and the Court

8    should thus reverse and remand the matter for further proceedings. Dkt. 9 at 3-4.

9         "When the Appeals Council considers new evidence in deciding whether to review a

10   decision of the ALJ, that evidence becomes part of the administrative record, which the district

11   court must consider when reviewing the Commissioner's final decision for substantial evidence."

12   *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). This is true even

13   where, as here, the Appeals Council chooses not to "exhibit" the evidence. *Williams v. Berryhill,*

14   2018 WL 6737511, at *3 (W.D. Wash. Apr. 19, 2018); *see also Mafara v. Kijakazi,* 2024 WL

15   3581621, at *6 (D. Nev. Jan. 30, 2024) (a determination that evidence would not change the

16   outcome of the ALJ's decision could not logically occur without considering that evidence). The

17   Court further notes the new evidence is part of the record and thus should be reviewed. *See*

18   *Brewes* at 1162. Accordingly, the Court finds the evidence Plaintiff submitted to the appeals

19   council is reviewable, and the Court must determine whether the ALJ's decision remains

20   supported substantial evidence. *Brewes,* 683 F.3d at 1163.

21        The Court focuses on whether the new evidence undermines the validity of the ALJ's

22   final decision, not whether the Appeals Council properly denied review. *See Williams,* 2018 WL

23   6737511, at *2. Here, the ALJ considered Plaintiff's impairment under Listing 1.20(D)

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

(amputation for any cause), and found Plaintiff failed to meet the Listing's requirements. Tr. 21-23. Listing 1.20D requires:

> Amputation of one or both lower extremities, occurring at or above the ankle (talocrural joint) with complications of the residual limb(s)[2] that have lasted, or are expected to last for a continuous period of at least 12 months, *and* medical documentation of 1 and 2:
>
> 1.  The inability to use a prosthesis(es); and
>
> 2.  A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)).

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.20D (emphasis original). The ALJ noted Plaintiff did not submit substantiating medical documentation to support his claim he could not use a prosthesis. Tr. 22.

Plaintiff contends the new evidence is substantiating medical documentation. Dkt. 9 at 4. The introduction to the listing for musculoskeletal disorders provides, in relevant part, "[i]f you cannot us your prothesis(es) due to complications affecting your residual limb(s), we need **evidence from a medical source documenting the condition of your residual limb(s) and the medical basis for your inability to use the device(s)**." 20 C.F.R. Pt. 404, Subpt. P., App'x 1 § 1.00C6b (emphasis added).

The new evidence does not adequately document Plaintiff's inability to use a prosthesis. There is little evidence of record documenting the condition of Plaintiff's residual limb or the medical basis for his inability to use a prosthesis. Consultative examiner Dr. Faria found Plaintiff's "amputation site is clean, no infection or breakdown." Tr. 400-01. Plaintiff's primary

---

[2] The Court notes that the term "residual limb" refers to the remaining portion of the limb that has been amputated (also called a stump), and not the other, noninvolved leg. *See* Attorneys Textbook of Medicine (Third Edition) § 2A.08(10)(e) (section titled "Residual Limb (Stump) Pain"); *see generally* Attorneys Textbook of Medicine (Third Edition) Chapter 2A Amputation (using residual limb and stump interchangeably).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 4

care physician, Dr. Mustafa, noted Plaintiff does not tolerate a prosthetic, but gave no basis for this statement. Tr. 434. The new evidence does not provide further support. Rather it shows Plaintiff visited a rehabilitation clinic in May 2012 to obtain a new socket for his prosthesis because he had gained weight and his old one no longer fit. Tr. 59. At that visit he reported doing very well, denied any pain or phantom limb pain, and the provider noted "[h]e has continued to use his C-leg successfully, except for lacking to use his leg due to the weight fluctuations." *Id.*

The new evidence regarding a neuropsychological evaluation completed for the Department of Vocational Rehabilitation in 2015, shows Plaintiff stated he had a prosthetic limb, but it fit poorly and caused pain. Tr. 44. New records from the Hanger Clinic dated May 2023 indicate Plaintiff reported he had been using crutches for the past six years because he could not wear his ill-fitting prosthetic. Tr. 34. Plaintiff returned to the clinic in August 2023 for a fitting. Tr. 36. After an alignment, no modifications were deemed necessary, and the note concluded Plaintiff was "ready to be scheduled for delivery of his prosthesis." *Id.*

The new evidence and record indicates Plaintiff does not use his prosthesis because it is ill fitting but he could use the prosthesis when the socket was fit appropriately. Although Plaintiff stated he suffered from blisters on his stump after he used his prosthesis, there is no medical documentation to support this claim. No skin breakdown, infection, blistering, or swelling have been noted in Plaintiff's residual limb nor has Plaintiff complained of such issues to any providers. Essentially, "[n]othing in the record suggests [Plaintiff] suffers from a medical inability to use a prosthetic device. There is extensive evidence that he is capable, physically and medically, of using a prosthetic device." *Thieme v. Berryhill,* 2018 WL 4087989, at *7 (D. Idaho Aug. 27, 2018) (finding plaintiff's limitations were due to ill-fitting prosthetics rather than "stump complications," which did not represent a "medical inability" to use a prosthetic device).

1    Thus, the Court concludes the new evidence submitted to the Appeals Council does not

2    undermine the ALJ's determination Plaintiff fails to meet the requirements of Listing 1.20D.

3    Remand for consideration by the ALJ is warranted only if the new evidence creates a reasonable

4    possibility of changing the outcome of the ALJ's determination, and the Court concludes in this

5    case the new evidence does not. *Mayes v. Massanari,* 276 F.3d 453, 462 (9th Cir. 2001).

6    Accordingly, the Court will not disturb the ALJ's finding Plaintiff fails to meet the requirements

7    of Listing 1.20.

8    **B.    Plaintiff's Testimony**

9    Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject his

10    testimony. Dkt. 9 at 5. The ALJ did not find malingering and was thus required to provide clear

11    and convincing reasons to reject Plaintiff's testimony. *See Vertigan v. Halter,* 260 F.3d 1044,

12    1059 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial

13    evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not

14    credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d

15    821, 834 (9th Cir. 1996). In other words, an ALJ's finding a claimant's testimony is not credible

16    must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the

17    claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's

18    testimony[.]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

19    Plaintiff testified his prosthesis does not fit correctly, causes pain, and difficulty walking.

20    Tr. 74. He stated he can only walk a short distance because his residual limb is weak, and he falls

21    a lot. Tr. 74-75. When he was working as a taxi driver, he wore his prosthetic leg, but he would

22    sweat a lot, which caused the prosthesis to slip and cause blisters on his stump. Tr. 86. Plaintiff

23    indicated he drives with his left leg and would fold the prosthesis underneath him while he

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 6

drove. Tr. 76. As driving in this manner caused hip and back pain, Plaintiff indicates he no longer uses his prosthesis when driving. *Id.*

The ALJ asked Plaintiff why he was not getting a prosthetic that works for him, and Plaintiff stated he has been refitted multiple times, but it never fits properly. Tr. 80. He attributes this to the fact his government insurance will only cover the most basic prostheses. *Id*. Plaintiff testified he was in the process of being fitted for a new one at the time of the hearing, but the clinic cancelled his appointments and stopped making the prosthetic because his insurance would not approve it without more information from his doctor. Tr. 81, 88. He stated he gets around better using bilateral crutches, but the long-term use of crutches has caused nerve pain and tendinitis. Tr. 79.

The ALJ found Plaintiff's impairments could be expected to cause "ongoing, work-related functional limitations during the period under review, but that they are less than totally disabling in severity, and less debilitating than the claimant has alleged." Tr. 24. The ALJ rejected Plaintiff's testimony he cannot use a prosthesis because Plaintiff did not submit sufficient medical documentation to support this claim, did not report his difficulties to providers or seek treatment, and stopped working for reasons unrelated to his impairment. Tr. 24-27. Plaintiff challenges the ALJ's reasoning as to his work history and the lack of objective evidence and contends the ALJ also improperly discounted his testimony based upon the care he provided his children. Dkt. 9 at 6-8.

In summarizing Plaintiff's testimony, the ALJ noted Plaintiff stopped working because of COVID, not his allegedly disabling impairment, and Plaintiff worked as a taxi driver for several years despite his impairment. Tr. 24.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 7

1          Plaintiff first contends he testified he stopped driving a taxi due to a combination of his

2    health and COVID, not just due to COVID. Dkt. 9 at 6. While Plaintiff refers to his health

3    generally as a reason he stopped working, the record indicates he stopped working because of the

4    impact COVID had on his health. *See* Tr. 75 ("it became difficult for me to keep working

5    because of COVID and my healthy decline") ("Because of my health. I had COVID many times

6    and physically it became hard for me to work."). The ALJ also confirmed this fact with Plaintiff:

7          <u>ALJ:</u> "Now you stopped driving the taxis because you got COVID?"

8          <u>Plaintiff</u>: "Many times. […] And my health declined because I'm coughing a lot,
            and customers are complaining about me[.]"

9

10   Tr. 84. Plaintiff also told consultative examiner Dr. Faria he stopped working due to the

11   pandemic and stated the same in a disability report. Tr. 284, 399. An ALJ may consider a

12   claimant's prior work record in assessing his subjective complaints, including the reason why a

13   claimant stopped working. 20 C.F.R. § 416.929(c)(3). Subjective symptom testimony may be

14   found incredible if the claimant left for a non-impairment related reason. *J.S. v. Kijakazi,* 2023

15   WL 4200020, at *1 (9th Cir. June 27, 2023) (citing *Bruton v. Massanari,* 268 F.3d 824, 828 (9th

16   Cir. 2001)). Thus, the ALJ reasonably considered Plaintiff stopped working for reasons unrelated

17   to his impairment.

18         Second, while Plaintiff previously worked with his impairment, Plaintiff states he is *now*

19   unable to work because he has more difficulty walking, suffers from nerve pain, cannot lift even

20   a small amount of weight, has an inability for his hands to be free, and has developed shoulder

21   pain from using his crutches. Dkt. 9 at 6 (citing Tr. 84-85) (emphasis original). Plaintiff argues

22   his capacity to perform work before the alleged onset of disability is not valid grounds to reject

23   his testimony about the symptoms he suffered after the onset of disability. Dkt. 9 at 6 (citing

     *Trevizo v. Berryhill,* 871 F.3d 664, 681 (9th Cir. 2017)).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

1    Plaintiff is correct the ability to work before the alleged disability onset date is not

2    automatically inconsistent with a claim of disability after the alleged onset date. But Plaintiff

3    alleged an onset date is April 1, 2019, and he continued to work as a taxi driver until March

4    2020, nearly a year later. Evidence of a claimant's performance of work after the alleged onset of

5    disability can undermine a claim of disabling symptoms. *Bray v. Comm'r of Soc. Sec. Admin.,*

6    554 F.3d 1219, 1226-27 (9th Cir. 2009). An ALJ may discount a claimant's allegations that an

7    impairment is disabling when the alleged impairment did not previously prevent him from

8    working and has not worsened. *See Gregory v. Bowen,* 844 F.2d 664, 666-67 (9th Cir. 1988).

9    Although Plaintiff alleges additional symptoms related to his impairment now prevent him from

10   working, he has failed to meet his burden to show additional symptoms developed following the

11   alleged onset date.[3]

12        Given the record, the Court cannot say the ALJ unreasonably discounted Plaintiff's

13   testimony based on his ability to work with his impairment or that the new evidence would

14   undermine the ALJ's determination.

15        Plaintiff further argues the ALJ improperly rejected his testimony on the basis his

16   prosthetic complaints were not corroborated by the record. "An ALJ cannot insist on clear

17   medical evidence to support each part of a claimant's subjective pain testimony when there is no

18   objective testimony evincing otherwise." *Smartt v. Kijakazi,* 53 F.4th 489, 498 (9th Cir. 2022).

19   However, an ALJ may consider a lack of supporting medical evidence so long as this factor does

20   not form the sole basis for discounting the testimony. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th

21   Cir. 2005).

22

23   [3] The earliest medical evidence in the record before the ALJ is dated November 2020, after Plaintiff stopped working. The new evidence dated 2023 does not provide sufficient information to establish Plaintiff's condition worsened since 2019.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9

The ALJ stated he was not persuaded Plaintiff has a medical inability to use his prosthesis, because Plaintiff did not submit sufficient medical documentation to support this claim, despite being granted extra time after the hearing to submit more substantiating records. Tr. 25. The ALJ summarized Plaintiff's medical records, noting the absence of any documentation of complications with his prosthesis. Tr. 24-26. *Contrast Harris v. Comm'r of Soc. Sec. Admin.,* 2023 WL 5596621, at *5 (D. Ariz. Aug. 3, 2023) (medical records supported medical inability to use prosthesis where records showed continuous vascular and skin complications associated with claimant's prosthetic such as recurrent infections and skin breakdown that required additional surgery). As the ALJ provided other reasons to discount Plaintiff's testimony, it was not improper for the ALJ to consider the lack of objective medical evidence.

The ALJ also discounted Plaintiff's testimony because Plaintiff failed to report his symptoms to providers. Tr. 26. Plaintiff has not challenged this reason. In evaluating a claimant's allegations, an ALJ may consider a claimant's inconsistent or nonexistent reporting of symptoms to providers. *Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006) (rejecting claimant's symptom testimony where he failed to report any shortness of breath or chest pain to medical sources). Despite Plaintiff's testimony he has nerve pain from long-term bilateral crutch use, weakness in his residual limb, blisters on his stump after wearing his prosthesis, and difficulty walking, there is no record of Plaintiff ever being treated for such ailments, nor is there documentation of these complaints to any provider. Plaintiff regularly visited his primary care physician (PCP) for issues including constipation, abdominal pain, bad breath, and rashes, but never mentioned complications with his prosthesis. *See, e.g.,* Tr. 372 (PCP visit, annual exam, complaining of rash on right arm, odor in mouth, and possible sleep apnea); 444 (visit to PCP

complaining of mouth breathing, snoring, headaches, fatigue); 454 (visit to PCP complaining of breathing issues, skin issues on arm and back, and infected thumb).

As the ALJ stated, "[p]resumably, if he was having significant complications from [his prosthesis], and had been since April 2019, this would have been related and noted at some point by his treating provider." Tr. 26. The ALJ also noted despite an alleged onset date of April 1, 2019, the earliest documented medical evidence is from November 2020, at which appointment the doctor noted he had not seen Plaintiff for about a year and a half. Tr. 25 (citing Tr. 444-48). Plaintiff's failure to report symptoms to his providers was a clear and convincing reason to reject his testimony.

Finally, Plaintiff argues the ALJ erred when he rejected Plaintiff's testimony because he cared for his children, when the record lacked detail with respect to his childcare responsibilities. Dkt. 9 at 7-8. Plaintiff's primary care physician wrote a letter in which he stated that due to Plaintiff's medical conditions (particularly related to his above knee amputation) he did not believe Plaintiff could serve as the primary and only caregiver to his children, one of whom has severe medical conditions. Tr. 483. The ALJ noted this was an opinion on childcare, not Plaintiff's capacity for work, and contained no substantiating evidence. Tr. 26. He then stated, "[i]t would seem at that time the claimant was providing full-time care to two children, including one with severe medical problems. This is likely why the claimant was not working." *Id.*

Plaintiff's function reports indicate his only responsibilities pertaining to the children were feeding them while sitting down and driving them to school. Tr. 290-91, 317. He also stated his wife performed most of the childcare because he is unable. Tr. 316. However, the new evidence Plaintiff submitted indicates "He [Plaintiff] is the primary caregiver for his boys and his wife works at an Amazon warehouse. He lives completely independently and would like to be

1    able to run and play with his boys." Tr. 34. The evidence regarding Plaintiff's childcare activities

2    is thus muddled. The evidence before the ALJ was not inconsistent with Plaintiff's testimony,

3    and "the mere fact that [the claimant] cares for small children does not constitute an adequately

4    specific conflict with [the claimant's] reported limitations." *Trevizo,* 871 F.3d at 682. However,

5    the new evidence tends to support the ALJ's determination that Plaintiff's childcare activities

6    undercut his claim. The Court finds assuming the ALJ erred in considering childcare, the error is

7    harmless because the ALJ has provided other valid reasons to reject Plaintiff's testimony. *See*

8    *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding, even if

9    the record did not support one of the ALJ's stated reasons for disbelieving a claimant's

10    testimony, the error was harmless).

11    　　　　In sum, as the ALJ provided clear and convincing reasons supported by substantial

12    evidence to discount Plaintiff's symptom complaints, the Court declines to disturb the ALJ's

13    assessment of Plaintiff's testimony.

14    ## C.    Past Relevant Work - Step Four

15    　　　　Plaintiff contends at step four, the ALJ erroneously found he could perform past relevant

16    work (PRW) as a taxi driver. Dkt. 9 at 9. Plaintiff argues the ALJ's step four determination is

17    erroneous because he did not work as a taxi driver at SGA levels and therefore that work does

18    not constitute PRW. Additionally, Plaintiff contends the ALJ's finding he can perform PRW as a

19    taxi driver is inconsistent with the Vocational Expert's (VE) testimony. Dkt. 9 at 9-11.

20    　　　　Plaintiff has a step four burden of showing he cannot perform PRW. *Pinto v. Massanari,*

21    249 F.3d 840, 844 (9th Cir. 2001). PRW is work the claimant has done within the past 15 years

22    that was substantial gainful activity SGA) and that lasted long enough for the claimant to learn to

23    do it. 20 C.F.R. § 416.960(b)(1)(i). SGA is defined as work that involves doing significant

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12

physical or mental activities and is work usually done for pay or profit. 20 C.F.R. § 416.972(a), (b). Earnings over amounts specified in the guidelines can create a rebuttable presumption of substantial gainful activity. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). Where a claimant is self-employed, however, wages are not the sole measure of SGA; rather, wages are considered along with the value of the individual's activities to their business. 20 C.F.R. § 416.975. Three tests are used to determine whether work performed by self-employed persons constitutes SGA. *See id.* at (a)(1)-(3).

Under the first test for self-employment, a claimant has engaged in SGA if he renders services that are significant to the operation of the business and receives a substantial income from the business. 20 C.F.R. § 416.975(a)(1). Where a claimant operates a business entirely by himself, any services he renders are significant to the business. *Id.* at (b)(1).

Substantial income is determined by making the following deductions from a claimant's gross income: normal business expenses; the reasonable value of any significant amount of unpaid help furnished by a claimant's spouse, children, or others; impairment-related work expenses; and any unincurred business expenses paid by another individual or agency. 20 C.F.R. § 416.975(c). "That part of your income remaining after we have made all applicable deductions represents the actual value of work performed. The resulting amount is the amount we use to determine if you have done [SGA]." *Id.*

In 2018, Plaintiff worked as a taxi driver and earned $15,236. Tr. 274-75. Without discussing any of the applicable tests for self-employment, the ALJ found these earnings surpassed the statutory minimum for 2018[4] and presumptively established SGA. Tr. 76. Plaintiff

---

[4] In 2018, the statutory minimum for SGA was $1,180 per month, or $14,160 per year. *See* SSA, *Tables of SGA Earnings Guidelines and Effective Dates Based on Year or Work Activity*, POMS SI 10501.015.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 13

1    testified he never lifted more than ten pounds when working as a taxi driver because passengers

2    would load their own luggage. Tr. 99, 333. He stated sometimes he would help load luggage, but

3    he required assistance from either the passenger or an airport employee. Tr. 99. Plaintiff argues

4    had the ALJ considered the assistance he received he may have found Plaintiff's work did not

5    constitute SGA. Dkt. 9 at 10.

6           Plaintiff's argument assumes the ALJ was required to make additional deductions to his

7    earned income of $15,236 because Plaintiff was self-employed. But there does not appear to be

8    any dispute that Plaintiff's taxi driver income represents the income he generated with the lifting

9    and other limits he claims. He has not shown what additional limitations the ALJ should have

10   applied but omitted, which have reduced his income. Hence the record shows Plaintiff's 2018

11   income meets the statutory minimum for SGA and the ALJ was not required to apply tests two

12   and three to determine SGA. *See* 20 C.F.R. § 416.975(a) ("If you have not engaged in substantial

13   gainful activity under test one, then we will consider tests two and three."). The Court

14   accordingly will not disturb the ALJ's determination.

15          Plaintiff also contends the ALJ's step four finding is erroneous because it is inconsistent

16   with the testimony of the VE. Dkt. 9 at 11. The ALJ found Plaintiff has the RFC to perform

17   sedentary work with certain other limitations. However, the ALJ asked the VE to assume an

18   individual who is capable of light level work, limited to two hours of walking and standing. Tr.

19   100. The VE testified such an individual could not perform Plaintiff's past relevant work,

20   specifically because of the amount of time the individual would be on his feet. *Id.*

21          Despite the VE's testimony the ALJ found the RFC determination limiting Plaintiff to

22   sedentary work, was consistent with the VE's testimony and accordingly found Plaintiff could

23   perform his PRW and was not disabled. Tr. 28. The ALJ erred. The VE testified an individual

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 14

1   hypothetically limited to two hours of walking and standing (which tracks with the limits of

2   sedentary work) would not be able to perform Plaintiff's PRW as a taxi driver.

3          As a rule, the ALJ's written decision must state reasons for disregarding VE testimony.

4   *Taylor v. Colvin*, 2013 WL 5946052, at *6 (W.D. Wash. Nov. 6, 2013) (citing *Flores v. Shalala*,

5   49 F.3d 562, 570-71 (9th Cir. 1995)). Here the ALJ did not provide any rationale to disregard or

6   reject the VE's testimony. Despite the VE's testimony, the ALJ erroneously found his RFC

7   determination and his findings at step four were consistent with the VE's testimony, when the

8   record shows otherwise. The error is not harmless, as the ALJ found Plaintiff can perform PRW,

9   when the VE stated Plaintiff cannot perform PRW, even if limited to two hours of standing or

10  walking, and the ALJ failed to proceed to step five of the sequential evaluation and make

11  findings under the step as to whether there are other jobs in the national economy that Plaintiff

12  could perform.

13         Accordingly, the Court concludes the matter must be remanded to reassess at step-four

14  whether Plaintiff can perform past relevant work, and if not to assess at step-five whether there

15  are any jobs in the national economy that he can perform.

## CONCLUSION

17         For the foregoing reasons, the Court **REVERSES** the Commissioner's final decision and

18  **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. §

19  405(g).  On remand, the ALJ shall develop the record, call a VE as needed, and evaluate at step-

20  four whether Plaintiff can perform past relevant work as a taxi driver, and if not proceed to the

21  fifth step of the disability determination process as appropriate.

22

23

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 15

DATED this 14th day of October, 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge